ISLER & GUYE *v.* UNITED STATES (No. 1511).[1]

1. UNFINISHED BAMBOO-CHIP HATS, HOW DUTIABLE.

Unblocked and untrimmed hats made of thin, narrow shavings of bamboo are dutiable as "hats * * * of * * * chip, * * * not blocked or trimmed" under paragraph 335, tariff act of 1913, and not as manufactures of wood under paragraph 176.

2. FIVE PER CENT DISCOUNT TO GOODS IMPORTED IN DUTCH VESSELS.

Goods imported in vessels belonging to Holland or the Netherlands are entitled to the 5 per cent discount under section 4, paragraph J, subsection 7, tariff act of 1913.

## United States Court of Customs Appeals, June 5, 1916.

APPEAL from Board of United States General Appraisers, Abstract 37056 (T. D. 35000).

[Modified.]

*Walden & Webster* (*Henry J. Webster* of counsel) for appellants.

*Bert Hanson*, Assistant Attorney General (*Charles D. Lawrence*, special attorney, of counsel), for the United States.

[Oral argument May 4, 1915, by Mr. Webster and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

This merchandise consists of men's hats composed of thin, narrow shavings of bamboo not trimmed or blocked. They were assessed for duty by the collector of customs at the port of New York as hats wholly or in chief value of chip, not blocked or trimmed, under the pertinent part of paragraph 335 of the tariff act of 1913, which reads:

335. * * * Hats, bonnets, and hoods composed wholly or in chief value of straw, chip, grass, palm leaf, willow, osier, rattan, cuba bark, or manila hemp, whether wholly or partly manufactured, but not blocked or trimmed, 25 per centum ad valorem; * * *.

Protestants claim that they are properly dutiable as manufactures of wood under the provisions of paragraph 176 of that act. They further claim a 5 per cent discount under the provisions of section 4, paragraph J, subsection 7 of the act. The Board of General Appraisers overruled the protest in all particulars, and the importers appeal.

In Tuska *v.* United States (1 Ct. Cust. Appls., 531; T. D. 31547), we held that bamboo of the same character as the material going to compose the hats here in question fell within the designation of chip. On the trial of this case before the board, the importers' counsel admitted that the material of which the hats in question is composed is chip, within the ordinary meaning of the word and within the definition which has been adopted by this court, but they sought to show that the term had a different commercial meaning in the trade. We do not decide whether the ordinary use of the word "chip" can be varied by proof of commercial usage, but it is altogether clear that without regard to the term applied to the product of an article as a hat, bonnet, or hood, whether they be called chip hats, or bamboo hats, or Java hats, or what not, if in fact they are composed wholly or in chief value of chip, they would of necessity fall within the terms of this paragraph. The burden of showing that the word "chip" itself has acquired a commercial designation which excludes therefrom bamboo chip was undertaken by the importers' counsel. But

we think he wholly failed to establish this. A number of witnesses were called who testified that chip hats as they understood the term in the trade included hats only which were made of chip of other woods than bamboo, and that hats made of chip bamboo were called either bamboo hats or Java hats. This falls far short of showing that bamboo chip, if introduced as a separate article of commerce, would bear a designation other than that employed in common usage. In the Tuska case it was held that bamboo was wood and that the shavings or chips of wood fell within the designation of chips.

One of the witnesses for the importers in this case testified that chip is shavings of wood, and answered the question, "This Exhibit 1 is made up of wood shavings; isn't it?" by saying, "I don't know if you call bamboo wood."

This was followed:

Q. Assuming for the sake of argument that bamboo is wood, then Exhibit 1 is made up of chip from that wood, isn't it?—A. I should say so; yes, sir.

Now it so happens that for reasons of their own dealers in chip bamboo see fit to designate the product when in the form of a hat, or possibly in the form of a basket, as a bamboo hat or a bamboo basket, respectively. But this does not necessarily mean that the material of which the article is composed if introduced by itself would bear any other name than that which common usage attributes to it. In the point of establishing that the material itself of which the bamboo is composed is excluded by commercial testimony from the term "chip," the testimony is not convincing. True, one witness testifies that he is a dealer in chip, among other things, and further testifies as follows:

Q. Has the term chip during your experience had a distinct and definite meaning in the trade which everybody understands?—A. Understood as chip.

Q. Will you state whether that understanding of the term chip included bamboo, split or otherwise?—A. No, did not; entirely different article.

Q. Have you a sample here of the chip you deal in?—A. Yes.

Q. Does this sample represent the article generally known as chip?—A. Represents the article *known in our business* as chip.

He also testified that the bamboo basket is not known or dealt in as a chip basket. This testimony goes little further than to show that this witness handles only chip made of other woods than bamboo. Possibly for the reason that bamboo would bear a higher price, the products of bamboo chip are usually designated by that name. But we think that there was a failure to show a commercial designation which attributes to this term any other than its ordinary meaning. The protests will therefore be overruled as to the claim for another classification than that given by the collector.

As to the question of the 5 per cent discount under section 4, paragraph J, subsection 7, of the act of 1913, the importers' case we

think was made out by testimony of the witness Krusser that the shipments were made in vessels belonging to Holland or the Netherlands. The treaties of those nations provide that the vessels of those nations are entitled to enter their goods on the same terms as those imported in American bottoms, and following our former decisions we hold that this discount should have been allowed.

As to this point the decision of the board is reversed; as to the classification, affirmed.

*Modified.* ·

DE VRIES, Judge, dissents on the point last discussed.